**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **Shawdese Libscumb,** | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| **vs.** | § | |
| | § | **Civil Action No. 4:24-cv-3411** |
| **Andrew Giles, Christopher Domingez,** | § | |
| **Roberto Mendez,** | § | |
| **and the City of Houston, Texas** | § | |
| | § | |
| *Defendants.* | § | |

**<u>Plaintiff's Original Complaint</u>**

COMES NOW, Shawdese Libscumb ("Plaintiff") and files this Plaintiff's Original Petition

against Defendants, in support of which would respectfully show the Court the following:

**I. PARTIES AND VENUE**

1.      Plaintiff, Shawndese Libscumb, is a resident of Harris County, Texas.

2.      Defendant, Mr. Andrew Giles is an individual residing in Harris County Texas who may

be served through the City Secretary at 900 Bagby Street, Houston, Texas, 77002.

3.      Defendant, Mr. Christopher Domingez is an individual residing in Harris County Texas

who may be served through the City Secretary at 900 Bagby Street, Houston, Texas, 77002.

4.      Defendant, Mr. Roberto Mendez is an individual residing in Harris County Texas who may

be served through the City Secretary at 900 Bagby Street, Houston, Texas, 77002.

5.      Defendant City of Houston, Texas, is a municipal corporation organized under the

Constitution and law of the State of Texas and located withing the United States Southern District

that can be served through the City Secretary at 900 Bagby Street, Houston, Texas, 77002.

6.      Venue is proper in the United States District Court Southern District as the region in which

all or part of the events giving rise to the cause of action occurred within that District.

## JURISDICTION

7.      This Court also has jurisdiction over Plaintiffs' Constitutional claims for which redress is provided by 42 U.S.C. § 1983: "State as well as federal courts have jurisdiction over suits brought pursuant to 42 U.S.C. § 1983, which creates a remedy for violations of federal rights committed by persons action under color of state law." *Howlett v. Rose,* 496 U.S. 365, 358 (1990).

## FACTS

8.      On or about the night of June 29, 2023, Shawndese Libscumb (hereinafter "Plaintiff" or "Libscumb") was driving her car to her boyfriend's home when the axle in the vehicle suddenly broke causing her vehicle to crash into a nearby fence. After the crash, Libscumb called the police for assistance with the crash. Houston Police department officers were dispatched to the scene. Officer Andrew Giles was one of the officers who arrived at the scene. Upon arrival, the officers began to speak with Libscumb about the incident. Libscumb was cooperative with the officers and made every attempt to follow their instructions and answer their questions.

9.      Several years prior to this incident, Libscumb was diagnosed with hypomania bipolar where she would occasionally experience manic episodes. These manic episodes are often triggered by events involving significant stress and severe anxiety. On the date in question, although Libscumb was upset about her accident, she remained calm while the officers discussed the incident. After speaking with Ms. Libscumb, however, the officers believed that she had crashed her vehicle due to intoxication. While the officers were initially unsure if they had sufficient evidence to arrest Ms. Libscumb for Driving While Intoxicated, they eventually made the decision to arrest her. The officers then informed Libscumb that they were arresting her, at

which point they placed handcuffs on Ms. Libscumb. Throughout the entire time where the officers were handcuffing Libscumb, she remained calm and made no attempts to avoid arrest or otherwise resist the arrest. Once the officers had already placed handcuffs on Libscumb, the officers suddenly ran her to the police car and put her in the back of the police car. At this point in time, Libscumb was secured in the back seat of the police car in handcuffs.

10.     Libscumb remained in the back of the police car, while handcuffed, for approximately thirty (30) minutes. During this time, she increasingly appeared to be in a state of hypomania due to the extreme stress and anxiety. As a result, Ms. Libscumb repeatedly yelled at the officers from the back of the police car while she continued to sit while secured in handcuffs. After about thirty minutes, however, it appears that the officers became agitated by Libscumb. The officers then move the police vehicle out of view from the street. Officer Giles then suddenly and without warning opened the back door of the police vehicle. Officer Giles proceeded to grab Ms. Libscumb and throw her violently to the ground.

11.     Because Officer Giles threw Ms. Libscumb to the ground while in handcuffs, she landed on the pavement with the full force of her fall landing on her face. Libscumb remained on the ground face first, while bleeding out onto the pavement. At this point, Officer Giles proceeded to hog-tie Libscumb, while she remained laying down face first on the ground in a pool of her own



blood. Officer Giles then tied a leg restraint around Mr. Libscumb's legs. The leg restraint was

then tied to the handcuffs so that Ms. Libscumb's feet were tied and attached within 12 inches of

her hands behind her back (a technique known as a "hog-tie").

12.     At this point, several additional officers arrived at the scene including Officers Christopher

Dominguez and Officer Roberto Mendez. Despite the number of officers, no attempt was made to

remove the hog-tie from Libscumb, and in fact she continued to lay on the ground while hog-tied

in a pool of her own blood. In fact, the officers at the scene made no attempt to remove the hog-

tie on Libscumb at the scene. Libscumb was then transported to the hospital by ambulance,

continuing to be hog-tied. It was not until Libscumb arrived at the hospital did the medical

personnel remove the hog-tie restraint from Libscumb. The medical personnel at the Hospital then

treated the injuries sustained by Officer Giles. Ms. Libscumb suffered significant injuries to her

face, arms, and body as a result of Officer Giles' excessive force. Aside from the physical injuries,

Ms. Libscumb continues to suffer significant mental anguish and trauma from the actions of the

officers that night.

13.     The use of a hog-tie is a highly controversial and largely banned technique used by police

officers to control potential suspects or prisoners. The City of Houston Police Department is one

of only a handful of cities which continue this dangerous practice. In fact, the U.S. Department of

Justice has long warned against the dangerous practice and unnecessary practice. The U.S.

Department of Justice has openly stated that this practice is not only dangerous but can often result

in serious injuries or sudden death. From the period between 2010 and 2021, at least 23 people

died nationwide as a result of hogtying. Of particular concern are individuals who are experiencing

mental health or medical co-morbidities and those individuals who have drug or alcohol

intoxication. Such individuals are particularly susceptible to positional asphyxia, whereby the act

Plaintiff's Original Petition                                                                4

of hogtying interferes with that person's ability to breath resulting in sudden in-custody death,

known as positional asphyxia. It is precisely because of the extreme danger, and the availability of

more effective and less intrusive technique, that the practice has be largely banned nationwide.

The fifth circuit has unambiguously banned the technique for more than 25 years. Despite all of

the reasons, both constitutionally and otherwise, for banning the use of hog-tie, the City of Houston

remains one of the few police departments who continues this inhumane practice.

14.      The City of Houston Police Department expressly allows the use of hogtying. The formal

policy of the City of Houston Police department, General Order 500-01 lists the "Interlocking

> **WARNING: DO NOT leave the prisoner face down when using the interlocking technique as *positional asphyxia* may occur.**
>
> Interlocking is meant only as a temporary measure and suspects must be released from the interlocked position as soon as it is safe and practical.
>
> A prisoner who initially appears to be in little or no distress after being interlocked may still develop respiratory difficulties. Therefore, whenever the interlocking technique is used:

Technique" as an available technique to be "used by only officers trained in and utilizing approved

interlocking devices".[1] Curiously, while the technique is expressly allowed by the department, the

policies make direct reference to the dangers of the technique:

15.      While the formal policies do make reference to the dangers, they allow the use in situations

expressly banned by the Fifth Circuit. Particularly, the formal policies do not forbid the practice

for individuals with drug and/or alcohol intoxication or those who are suffering from mental health

issues who are particularly susceptible to difficulty breathing. Further the policies do not inform

officers to attempt to use less intrusive techniques to control an individual, and more importantly

do not prohibit its use on otherwise calm, controlled individuals. There is simply no basis for the

continued use of this inhumane practice, and the fact that the New York and Los Angeles Police

---

[1] While the policies use the term "Interlocking Technique", this policy is identical to a "hog-tie" technique.

Departments have long since banned the technique suggests that they provide little function to police other than putting an individual at increased risk of injury or death.

16.     Further, the informal policy and practice of the City of Houston allows and promotes the use of hog-tie technique even in situations which the individual presents little to no risk of danger to themselves or the officers. As an example, in an incident on July 11, 2021, Houston Police Department received notification of a 911 call of a "Hispanic" male who had allegedly committed an assault. The officers had no other identifying information about the individual other than he was "Hispanic". The officers finding the first Hispanic male nearby then approached Alberto Ramos and almost immediately tackled him to the ground. Mr. Ramos was then handcuffed and placed in the back of the police car. The officers then noticed that Mr. Ramos mental status began to deteriorate and that he appeared to be under the influence of some unknown drug. As his mental status continued to deteriorate, the Officers then decided to pull him out of the police car and hog-tie him on the ground. Ramos filed suit, and the District Court found that the officer violated Mr. Ramos' constitutional rights by hogtying him. This is only one of many examples of Houston Police Department unnecessarily hog-tying individuals who are experiencing mental health issues or have a drug or alcohol intoxication. This regular practice represents an informal policy and pattern of practice that is in direct conflict with the constitutional rights of countless individuals.

## FIRST CLAIM FOR RELIEF

## Unconstitutional Use of Excessive Force 42 U.S.C. § 1983 violation of 4th Amendment by Defendant Andrew Giles

17..     Plaintiffs incorporate and adopt by reference all the facts and allegations above as though fully set forth herein.

18..     Plaintiff was entitled to be free and is protected from unreasonable search and seizure of

his person by and pursuant to the parameters of the 4th and 14th Amendments to the United States ConsConstitution and also entitled to be safe and secure from undue and unreasonable excessive force. Defendant Andrew Giles, a law enforcement officer acting in the course and scope of his employment with the police department, and acting under color of state law, unjustifiably used excessive force against Shawdese Libscumb under circumstances where no reasonable law enforcement officer would have done so. Under established precedent on excessive force, Officer Giles is not entitled to qualified immunity or other immunity for these actions.

19.     The acts and omissions of Officer Giles violated Shawdese Libscumb's protected rights and were an extreme and excessive seizure of her person unjustified by cause, were objectively unreasonable based on the totality of circumstances, and violated the rights held by Libscumb to her safety, bodily integrity, and humane treatment, fully protected by the 4th and 14th Amendments to the United States Constitution. Officer Giles's conduct amounted to an unconstitutional seizure invoking the protections of the Fourth Amendment, as a seizure occurs when physical force or threat of physical force restrains the liberty of an individual. Officer Giles's use of force in the current matter violated the Fourth Amendment as it caused significant injury, was excessive to the need, and its excessiveness was objectively unreasonable. The use of force is objectively unreasonable unless it is necessary to prevent an imminent threat or harm. There existed no objectively reasonable facts that would have supported the belief that Libscumb presented an imminent danger to the officer or members of the public. Defendants violated the requirements of the 4th and 14th Amendments and the rights held by Libscumb, as they related to her bodily integrity and safety, amounting to an unconstitutional use of force.

20.     The specific acts of Officer Giles that Plaintiffs claim were objectively unreasonable and that resulted in and independently amounted to excessive force and/or unreasonable seizure in

contravention of Shawdese Libscumb's rights include but are not limited to:

- Transporting Libscumb to a parking lot and throwing her from the back of the police vehicle onto the concrete.
- Hog-tying Libscumb, a method of restraint that is widely recognized as excessively restrictive and dangerous.
- Leaving Libscumb on the ground bleeding, hog-tied, and unattended for a full 20 minutes before the arrival of medical personnel.
- Failing to provide immediate medical attention or a safer alternative means of restraint.
- Continuing to restrain Libscumb in a hog-tied position for another 20 minutes during transport to the hospital.
- Using a method of restraint that posed significant risk of injury or his, especially in light of her non-violent and passive condition.
- Demonstrating deliberate indifference to Libscumb's medical needs and well-being during the period of restraint and transportation.

21.     Officer Giles had no reason to believe that Libscumb posed any threat to herself or others while she was restrained in the back of the police car, and consequently, the use of excessive force was objectively unreasonable at the time. It is clear that a reasonable law enforcement officer would understand that the unnecessary force used against Shawdese Libscumb under these circumstances was unlawful.

22.     All of Officer Giles's conduct was well defined by law and he knew or reasonably should have known that his conduct was below the standard prescribed by law herein.

23.     As a result of the violations of the Constitutional Standards set forth herein, Libscumb was treated inhumanely, endured severe pain, injury, and distress, and experienced significant harm due to the wrongful and excessive use of force by Officer Giles.

24.     As a result of these Constitutional violations to Plainitiff and the injuries he incurred, Plaintiff seeks compensation set forth more specifically in the section of this complaint entitled "Damages".

**SECOND CLAIM FOR RELIEF**

**Unnecessary Excessive Force and Failure to Intervene 42 U.S.C. § 1983 violation of 4th**

Plaintiff's Original Petition                                                                                        8

**Amendment by Defendants Roberto Mendez, Christopher Dominguez**

25.     Plaintiffs incorporate and adopt by reference all the facts and allegations above as though fully set forth herein.

26.     Plaintiff was entitled to be free and is protected from unreasonable search and seizure of her person by and pursuant to the parameters of the 4th and 14th Amendments to the United States Constitution and was also entitled to be safe and secure from undue and unreasonable excessive force. Defendant Andrew Giles, a law enforcement officer acting in the course and scope of his employment with the police department, and acting under color of state law, unjustifiably used excessive force against Shawdese Libscumb under circumstances where no reasonable law enforcement officer would have done so. At the scene several officers were present at the scene including Officer Roberto Mendez and Christopher Dominguez. These officers were present at the scene when and while Officer Andrew Giles hog-tied Libscumb for an extended period of time while she sat in a pool of her own blood. These officers had a duty to intervene and a reasonable opportunity to intervene but failed to intervene to protect Libscumb from deprivation of her rights by their fellow officers.

27.     At all times relevant to this Complaint, all individually named Defendants were duly sworn and licensed police officers employed by the City of Houston in the Houston Police Department acting under color of law within the scope of their employment.

28.     The actions of all individually named Defendants were a proximate cause and cause-in-fact of Dennis' injuries and death and Plaintiffs' damages.

29.     The conduct of all individually named Defendants were motivated by malice and/or involved reckless and callous indifference to Plaintff's constitutional rights. Defendants engaged in this conduct intentionally, willfully, and wantonly, and with deliberate indifference to, and

reckless disregard for Plaintiff's constitutional rights.

30.     At the time of Defendants' actions described herein, no reasonable officer with the same information could have believed that his actions were lawful in light of clearly established law. Therefore, the individually named Defendants are not entitled to qualified immunity.

31.     As a result of the violations of the Constitutional Standards set forth herein, Libscumb was treated inhumanely, endured severe pain, injury, and distress, and experienced significant harm due to the wrongful and excessive use of force by Officer Giles and the other officers present at the scene, Roberto Mendez, Christopher Dominguez, who failed to intervene.

32.     As a result of these Constitutional violations to Plaintiff and the injuries he incurred, Plaintiff seeks compensation set forth more specifically in the section of this complaint entitled "Damages".

**THIRD CLAIM FOR RELIEF**

*Monell* **Claim 42 U.S.C. § 1983 4th and 14th Amendment Violations-Harris County Unlawful Formal Policy and acts by Official Policy Maker**

33.     Plaintiffs incorporate and adopt by reference all the facts and allegations above as though fully set forth herein.

34.     The actions of the officers alleged in this petition were endorsed and approved by the Defendant City of Houston, Texas by and through the City of Houston Police Department.  As a direct result of the policies, practices, customs and procedures, Shawdese Libscumb was deprived of her constitutional right to be free from unreasonable searches and seizures guaranteed to her by the Fourth Amendment to the United States Constitution.

35.     The Chief of Police for the City of Houston Police Department was an official policymaker for the City of Houston with regard to the police function for the municipality.  Actions in

endorsing the illegal actions of its officers, including allowing and endorsing the use of hog-tie and the unlawful use of force in manner under the circumstances herein, constitutes the official policy of the City of Houston, Texas. The endorsement of the actions of subordinate staff creates and enforces an unconstitutional and illegal policy.  The City of Houston Police Department further maintains formal written policies which are unconstitutional and illegal.

36.     The policy endorsed by the Defendant City of Houston policy makers which includes the acts outlined herein to be used under the circumstances herein violates the 4th and 14th Amendment protections held by Libscumb and are unconstitutional per se.

37.     The Houston Police Officer's use of objectively unreasonable and excessive force as set out above is in accordance with Defendant's policies, procedures, practices, and customs relating to the use of force.

38.     At all material times, the individual agents and officers followed the policies, procedures, customs, and practices of and were acting under color of law.  Defendant City of Houston's deficient customs, policies, procedures and practices relating to use of force amount to conscious disregard of and deliberate indifference to citizens' rights not to be subjected to unlawful detention and/or excessive force. Further, the deficient customs, policies and/or practices are a direct and proximate cause of the unlawful detention and/or use of excessive force complained of herein.  As a direct result of the policies, practices and procedures of City of Houston, Shawdese Libscumb was purposefully deprived of her constitutional right to be free from unreasonable searches and seizures guaranteed to her by the Fourth Amendment to the United States Constitution.

39.     The official policy endorsed and created by the City of Houston policy maker amounted to Constitutional violations to Libscumb and resulted in the injuries she incurred.  Plaintiffs seek

compensation set forth more specifically in the section of this Complaint entitled "Damages."

## FOURTH CLAIM FOR RELIEF

### *Monell* Claim 42 U.S.C. § 1983 4th and 14th Amendment Violations-Harris County

### Informal Custom and Policy

40.     Plaintiff incorporates and adopts by reference all the facts and allegations above as though

fully set forth herein.

41.     City of Houston has an informal custom, practice or policy regarding the use of force.

The custom, practice or policy includes, but is not limited to:

- Allowing, encouraging, requiring, and/or training officers to use excessive force and/or deadly force when less intrusive and/or harmful measures were more appropriate.
- Permitting officers to use hog-tying as a method of restraint, despite the well-documented dangers and risks associated with this practice, particularly when the suspect is not posing an active threat.
- Failing to properly supervise officers in their use of deadly force, leading to dangerous and life threatening practices.
- Failing to properly investigate incidents involving officers' use of excessive force, including the use of hog-tying, thereby perpetuating unlawful practices.
- Failing to properly discipline officers who misuse force, thereby endorsing and perpetuating the continued use of excessive and dangerous tactics.

42.     As a direct cause and result of these constitutional violations by City of Houston of

Libscumb' rights and the injuries she incurred, Plaintiff seeks compensation set forth more

specifically in the section of this Complaint entitled "Damages".

## FIFTH CLAIM FOR RELIEF

### *Monell* Claim 42 U.S.C. § 1983 4th and 14th Amendment Violations-Ratification

43.     Plaintiff incorporates and adopts by reference all the facts and allegations above as though

fully set forth herein.

44.      City of Houston, by and through the Houston Police Department, ratified the conduct of

its officers in that one or more authorized policymaker(s) for the county approved of the decisions of such officers and the basis for them, thus making the county responsible for such conduct.

45.     As a direct cause and result of these Constitutional violations by City of Houston of Plaintiff's rights and the injuries she incurred, Plaintiff seeks compensation set forth more specifically in the section of this complaint entitled "Damages".

## DAMAGES

46.     Defendants are liable to Plaintiff for actual damages and compensatory damages, together with a statutory attorney's fee as authorized by 42 U.S.C. § 1988 and Plaintiffs pray for judgment against Defendants for actual damages, compensatory damages, all costs, expenses, expert witness fees and attorneys' fees incurred herein, appropriate equitable relief in an amount in excess of the minimum jurisdiction of this court, as well as for pre-judgment and post-judgment interest at the lawful rate and for such other relief as the Court deems just and proper.

47.     This cause of action is brought to recover damages for the injuries sustained, including but not limited to the damages Plaintiffs suffered as a direct result of the deprivation of Shawdese Libscum's civil rights under the terms and provisions of the laws and statutes of the United States, and the state of Texas.

48.     WHEREFORE, Plaintiffs pray for judgment consistent with the allegations in this Petition against Defendants for actual damages, compensatory damages, statutory attorney's fees pursuant to 42 U.S.C. § 1988 for the civil rights counts in this Petition, punitive damages against the individual Defendants for the civil rights counts in this Petition, punitive damages for the Texas law claims, attorney fees, expert fees, all costs, expenses, appropriate equitable relief, for interest at the highest lawful rate, and for other relief as the Court deems just and proper.

Plaintiff's Original Petition                                                                 13

**DEMAND FOR JURY**

49.     Plaintiff respectfully requests a trial by jury.

**PRAYER**

WHEREFORE, PREMISES CONSIDERED, Plaintiffs pray for judgment against

Defendants, and each of them, jointly and severally, as follows:

1.     Special damages according to proof;

2.     General damages according to proof;

3.     Punitive and exemplary damages according to proof;

4.     Costs of suit and reasonable attorney's fees;

5.     Prejudgment and post-judgment interest at the highest rate allowed by law; and

6.     Such other and further relief to which Plaintiffs may show themselves justly entitled, both at law and in equity.


Respectfully submitted,


BORUNDA & FOMBY PLLC

/s/  Adam Fomby_____
Adam W. Fomby
State Bar No. 24083006
Jorge Borunda
State Bar No. 24027205
12141 Wickchester Lane Unit 650
Houston, Texas 77079
(713) 930-4878 Telephone
(888) 588-4925 Facsimile
adam@txialaw.com
jorge@txialaw.com

ATTORNEYS FOR PLAINTIFF